### 22955.   NATIONAL FIRE INSURANCE COMPANY OF HARTFORD v. HORNBUCKLE.

DECIDED OCTOBER 23, 1933.

*Jones, Fuller, Russell & Clapp, J. D. McLamb,* for plaintiff in error.   *Robert R. Forrester, Fulwood. & Fulwood,* contra.

BROYLES, C. J. Under the rulings in headnotes 1 and 2 (repeatedly announced by the Supreme Court and this court), the assignments of error on the exceptions pendente lite will not be passed upon.

This was a suit on a policy of fire-insurance covering a stock of goods and store furniture and fixtures of the plaintiff. The policy contained, among other provisions, the warranty known as the "iron-safe clause." The petition alleged that the plaintiff had complied with all the conditions of the policy. The defendant's answer averred that the plaintiff had not complied with the "iron-safe clause" of the policy, which is as follows: "Warranty to keep books and inventories, and to produce them in case of loss. The following covenant and warranty is hereby made a part of this policy: 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year; and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned. 2. The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in the first section of this clause, and during the continuance of this policy. 3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the premises mentioned in this policy are not actually open for business or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the property hereby insured. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon." On the trial the undisputed evidence showed that no proper set of books was kept by the plaintiff, that no inventory was taken by him within thirty days after the issuance of the policy, and that the inventory taken within twelve calendar months prior to the date of the policy was not produced for the inspection of the in-

surance company, but had been left out of the safe and destroyed in the fire. The evidence demanded a finding that the plaintiff had failed to comply with the provisions of the "iron-safe clause" of the policy, which required him to "keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory;" and that he also failed to comply with the provisions of the clause which required him to keep the last preceding inventory securely locked in a fireproof safe at night, and at all times when the premises were not open for business, or to keep it in some place not exposed to a fire which would destroy the property insured, and to produce it for the inspection of the insurance company. Nor does the record contain any evidence showing or tending to show that, because of some emergency (as in Liverpool &c. Co. v. Kearney, 180 U. S. 132, (21 Sup. Ct. 326, 45 L. ed. 460), the inventory was left out of the safe or otherwise lost or destroyed. ` It follows that the verdict in favor of the plaintiff was unauthorized by the evidence, and that the court erred in refusing to grant a new trial. See *Clark* v. *Fire Association of Philadelphia*, 31 *Ga. App.* 3, and cit. In view of the foregoing ruling, which controls the case, the special grounds of the motion for a new trial are not considered.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*

GUERRY, J., concurring specially. I concur in the result reached in this case, but not in all that is said therein. An examination of the evidence shows clearly that the plaintiff failed to keep such a set of books as would "clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments." While it is true that it is a sufficient compliance with the "iron-safe clause" that the insured keep a set of books from which, "with the assistance of those who understand the system on which they were kept, the amount of purchases and the amount of sales can be ascertained" (*Ætna Insurance Co.* v. *Lipsitz*, 130 *Ga.* 170, 60 S. E. 531, 14 Ann. Cas. 1070), the records introduced in evidence failed to show such a compliance. I can not agree to what is said in reference to the inventory shown. It was shown that an inventory was taken about the first of April, 1930. The policy was issued on January 12, 1931. It was further shown that another inventory was taken beginning March 3, 1931,

and completed during March, 1931. This inventory taken in March, 1931, was introduced in evidence. The inventory taken in April, 1930, was burned in the fire. In so far as the case of *Clark v. Fire Association,* 31 *Ga. App.* 3 (supra), is cited in support of the theory that the failure to keep the inventory taken in April, 1930, would avoid the policy, I do not concur. The policy provides that "The assured will take a complete itemized inventory of stock on hand at least once in each calendar year; and unless such inventory has been taken within twelve months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of the policy, or this policy shall be null and void from such date. . . The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked," etc. The purpose of the "iron-safe clause" in a fire-insurance policy is to protect the insurer against fraud on the part of the assured, and furnish a mode by which the insurer may ascertain for itself the extent of the loss. The law should lend itself fully to the support of the insurer in seeing that all reasonable conditions necessary in support of such a purpose are carried out. This policy contains the usual stipulations in fire-insurance policies; so that the insured, unless he has taken an inventory of his stock within twelve months before the issuance, must do so within 30 days after the issuance of the policy, or it will be void. It is further provided that an inventory shall be taken once in each calendar year. If no inventory has been taken prior to the issuance of the policy, the assured has protection for thirty days, but not thereafter unless he takes an inventory within such time. It is presumed that an insurer upon the issuance of a policy of insurance makes at least some inspection, or determines in some way for himself the apparent value of the stock of goods being insured, and insures the same for thirty days without an inventory. The provision that an inventory be taken each calendar year is for the purpose of providing other and additional means of verification of the amount of the stock then on hand. Theoretically, at least, an inventory taken five years ago, together with a complete and accurate invoice of goods bought and goods sold, and cash and credit sales, together with evidence as to the difference between the selling price and the invoice price, would be sufficient to show the amount then on hand. The inventory,

however, furnishes a new point or balance from which to start an investigation. It no longer becomes material as to what the inventories of the preceding years may have shown as illustrating what was the amount of the stock at the present time. All prior calculations are merged into the new inventory. If this inventory is preserved and books showing purchases and sales are also kept and preserved, the insurer may, in case of fire, determine for itself the amount of the stock on hand at the time of the fire. This is the object and purpose of the provision in the policy, and is a sufficient compliance therewith. The failure to preserve the inventory made prior to the issuance of the policy, where another inventory has been taken and preserved since the issuance of the policy, does not avoid the policy. A reading of the record in the *Clark* case, supra, will disclose that this question was not clearly passed upon. If it may be so construed, in my opinion it is contrary to the true meaning of the iron-safe clause. The failure to preserve an inventory after it has served its purpose may not avoid a policy; for that would declare a forfeiture, which is not favored by the law when the reason for the forfeiture has been taken away.